Spayd's Appeal

*Warren K. Hess* and *Alan M. Hawman, Jr.*, for appellant.

*Richard T. Williamson*, contra.

SCHAEFFER, P. J., October 11, 1937.—This is an appeal under the Act of April 6, 1937, P. L. 213, from the action of the Board of School Directors of the School District of the Borough of Womelsdorf refusing, after due hearing, to reëlect petitioner as a professional employe of said school district. There is no complaint as to the regularity and due formality of the hearing and the notice to petitioner of the decision of the board. But petitioner does contend that the several charges made against him have not been sustained.

The notice of the original declination by the board to reëlect Mr. Spayd and fixing the time of hearing set forth four charges or reasons for their action. The first is: "Persistent and wilful violation of the school laws of the Commonwealth of Pennsylvania, in failing to devote his time and efforts solely to the performance of his duties as teacher"; and the second: "Wilful and deliberate violation of the terms of his contract . . . by engaging in a professional pursuit and business for hire during a substantial portion of the school year separate and wholly distinct from his profession of teaching." These can be considered together.

As to the second, petitioner contends that under the Act of 1937, supra, the board was required "within thirty days after the effective date of this act [April 6, 1937], [to] enter into contract, in writing," in the form set forth in the act, with "all professional employes now employed by them," and that, therefore, at the time of the hearing on July 7, 1937, the new contract should have

been in force. With that we agree. For petitioner was a professional employe of the board, within the meaning of the act, on April 6, 1937, and as such was entitled by the act to a further contract of employment 30 days after April 6th, unless his employment should have been terminated by notice and opportunity for hearing given, in accordance with the provision of the Act of 1937, within 30 days after said April 6th. After April 6, 1937, by virtue of that act, the only method of terminating a contract with a professional employe which remained open to the board was by sustaining after hearing formal charges for specified reasons recognized by the statute: In re Yeager's Appeal, 29 Berks 308.

As the board of school directors is an official body, the rule must be applied that they shall be presumed to have done what the law requires them to do. It may be conceded, therefore, that the form of contract set forth in the Act of April 6, 1937, supra, shall be considered as the form of petitioner's employment contract after May 5, 1937. But certainly up to that date, and probably until the end of the school term of 1936-37, the former contract between the board and petitioner was in effect. And by that contract petitioner agreed "to devote all time to the teaching of said school and work incidental thereto, to the exclusion of any other business during the continuance of this agreement."

It is clear from the testimony and we find as a fact that petitioner played professional basketball during the seasons 1935-36 and 1936-37 while under contract with the school board as a teacher. In the latter season he engaged in about 21 games.

Petitioner contends that his playing of professional basketball was at least tacitly approved by the board. But we are unable to draw that conclusion from the testimony. It appears that, during the school year 1935-36, he asked certain members of the board individually, and it may be that they voiced no personal objection. But it does appear that, prior to the 1935-36 season, he en-

deavored to secure the permission of the board to engage in that activity, and the board refused such permission. It further appears that on March 13, 1935, the board passed a resolution that "Mr. Spayd be released from his contract" because of his professional basketball playing, but that after several conferences he was reinstated. Despite all this and without any other formal or informal agreement upon the part of the board to waive the breach of the provision of his contract prohibiting "any other business during the continuance of this agreement", he played throughout the winters of 1935-36 and of 1936-1937.

The third charge, as specified in the notice by the board, is: "Wilful and persistent negligence in failing to cover adequately the required course of learning during the school year." As to this, Mr. Spayd testified that during the last year he was unable to cover the prescribed course in algebra because the members of the class were "too slow" and not "grounded in fundamentals." The testimony is not sufficiently clear to tell us precisely what proportion of the course was not taught or to permit us to judge with assurance whether the failure to cover the entire course be properly attributable to petitioner.

The other charge is incompetency in teaching mathematics. This charge is founded upon the percentage of failures among the pupils, and upon the fact that former pupils had failed to procure admission to certain other schools because of lack of proficiency in mathematics. Upon these points the testimony is extensive and involved. The principal showed that, for the year 1936-37 in ninth grade algebra, four pupils out of a class of forty failed, and three were conditioned, and in the tenth grade algebra the failures were two out of a class of thirty, with five who were conditioned. From his single observation of Mr. Spayd's teaching each year, the county superintendent of schools was of the opinion that Mr. Spayd knew his subject and had the necessary ability to teach, but had not properly prepared the lesson for the day. The

assistant county superintendent observed petitioner's work on three occasions during the past school year, as well as several times annually in former years. His criticism was that Mr. Spayd's teaching methods were faulty in that he himself did too much of the class work and thus required the pupils to learn by absorption instead of by doing. This witness rated Mr. Spayd last year as "fair," although in a former year his rating had been "good." There was other testimony tending to show that Mr. Spayd was not a strong teacher.

For his part, Mr. Spayd explained how he had prepared himself for the work of teaching and the methods by which he tried to keep progressing. He demonstrated a willingness to assist backward pupils by maintaining a "hospital" class after school. And a former principal of the school testified that, in his opinion, Mr. Spayd was a competent teacher. It was also gratifying to hear three former pupils, who have since entered schools of higher learning, testify that they had had no difficulty in their higher mathematics and that they considered Mr. Spayd a good teacher.

Under the Act of 1937, the duty of the court, after hearing the testimony, is to "make whatever order it considers just, either affirming or reversing the order of the board of school directors, and stating plainly whether the professional employe is to be discharged, refused reëlection or is to be retained."

After a careful consideration of all the testimony, we are of the opinion that the order of the school board should be affirmed. Petitioner did persist in playing professional basketball in violation of the express terms of his contract. And it must be borne in mind that he did this, not only after the board had refused his request that that provision be waived, but also after the board had adopted a resolution in effect discharging him for that reason. These facts, taken into consideration with his failure to complete the prescribed course of study and the doubtful results of his teaching, have justifiably, in our estima-

tion, destroyed the confidence of the board and of Mr. Spayd's professional superiors in his work. For these reasons we do not believe it to be just to require the board to reinstate Mr. Spayd.

The actions of petitioner in continuing to engage, while a teacher, in professional sports in violation of his contract constituted "wilful and persistent negligence" under the Act of 1937. For negligence may be either an omission to act or an act in the violation of duty. The duty was established by the contract. The number of times and the period of time over which he played characterize such action as wilful and persistent.

There is no doubt of the sincerity and good faith of the school board in this matter. Their action has been unanimous. Under the circumstances here, we do not believe action by this court requiring the board to retain the petitioner would be either just or founded upon good public policy.

And now, to wit, October 11, 1937, the action of the Board of School Directors of the School District of the Borough of Womelsdorf in declining to reëlect petitioner as a professional employe of said school district is affirmed, and petitioner is directed to pay the costs of this proceeding.